UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                -against-

RONALD OLSON,

                              Defendant.
-----------------------------------------------------------x

20-cr-356 (PKC)

OPINION
AND ORDER

CASTEL, U.S.D.J.:

        Defendant Ronald Olson filed a pro se motion for a sentence reduction pursuant to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A).  (ECF 44.)  Olson argues that there are extraordinary and compelling reasons to reduce his sentence, namely, the heightened medical risk posed by the COVID-19 pandemic.  The government opposes his application.  (ECF 45.)  For the reasons described below, Olson's motion will be denied.

BACKGROUND

        From approximately 2011 to 2018, Olson was a Vice President and the Deputy Manager of Operations at Turner Construction ("Turner"), a company that performed construction, renovation, and maintenance projects.  (ECF 17 ¶ 10.)  From 2011 through 2017, Turner was responsible for conducting the bidding process for the larger construction projects of Bloomberg LP ("Bloomberg").  (Id. ¶¶ 11-12.)

        Beginning in approximately 2011, the construction managers at Bloomberg and Turner engaged in a significant bribery and kickback scheme.  (Id. ¶ 14.)  In particular, Olson and Vito Nigro, on behalf of Turner, and Anthony Guzzone and Javier Paulino, on behalf of

1

Bloomberg, engaged in collusive and unlawful bigging arrangements, whereby they diverted subcontractor awards for Bloomberg's construction projects to dozens of subcontractors that agreed to pay substantial bribes that were shared among Guzzone, Paulino, Nigro, Olson, and later, Bloomberg executive Michael Campana.  (Id. ¶¶ 14-15.)  During the course of the offense, Olson accepted approximately $1,534,400 in unlawful bribe payments from multiple subcontractors.  (Id. ¶ 17.)

Olson and his co-conspirators also engaged in a tax evasion scheme in connection with the proceeds from the bribery and kickback scheme.  (Id. ¶ 20.)  From 2011 to 2017, Olson falsely and fraudulently omitted from his tax filings the $1,534,400 in income he received from the scheme, resulting in unpaid federal tax liability totaling $531,749.55.  (Id.)

On December 11, 2018, Olson was arrested in connection with a 72-count indictment brought in New York County Supreme Court related to the bribery and kickback scheme.  (Id. ¶ 45.)  On July 16, 2020, Olson waived indictment in this Court and was charged in an information with one count of tax evasion, in violation of 26 U.S.C. § 7201.  (ECF 2; ECF 6.)  On July 29, 2020, Olson pleaded guilty before this Court to the information's sole count of tax evasion.  (ECF 13.)  On September 30, 2020, Olson pleaded guilty in the state case to grand larceny in the first degree.  (ECF 17 ¶ 45.)

On June 15, 2021, this Court sentenced Olson on the tax evasion count to which he pleaded guilty.  At sentencing, the Court concluded that the applicable guideline range was 46 to 57 months imprisonment, and neither the government nor Olson objected to this conclusion.  (ECF 40 at 4.)

The Court sentenced Olson to 46 months imprisonment and three years of supervised release.  (Id. at 51.)  Olson's fined was waived because he was ordered to pay

restitution in the amount of $661,519.57 within nine months of the date of sentencing. (Id. 51-53; ECF 39.) Olson is currently incarcerated at FCI Danbury. His projected release date is April 21, 2024.[1]

LEGAL STANDARD

Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant who has exhausted all administrative remedies, a court "may reduce" the defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction." See 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable" and must find that the reduction is "consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The United States Sentencing Commission is required by statute to promulgate "general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) . . . [that] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); United States v. Brooker, 976 F.3d 228, 232 (2d Cir. 2020). The Sentencing Commission has promulgated Guideline section 1B1.13, which applies only to motions made by the BOP – not to motions brought by defendants. Brooker, 976 F.3d at 232, 235-36; U.S.S.G. § 1B1.13.

Accordingly, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." Brooker, 976 F.3d at 236. District courts have "broad

---

[1] "Find an inmate," Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Apr. 11, 2023).

discretion" when considering compassionate release motions brought by defendants and are free to "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them." United States v. Amato, 48 F.4th 61, 65-66 (2d Cir. 2022); Brooker, 976 F.3d at 236-37. "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason'" for sentence reduction. Brooker, 976 F.3d at 237-38 (quoting 28 U.S.C. § 994(t)) (emphasis in original) (alteration in original).

Even upon a defendant's motion, however, district courts may still look to section 1B1.13 for guidance in exercising their discretion. See, e.g., United States v. Rodriguez, 16-Cr-07, 2020 WL 7640539, at *3 (S.D.N.Y. Dec. 23, 2020); United States v. Burman, 16-Cr-190, 2021 WL 681401, at *3, 5 (S.D.N.Y. Feb. 21, 2021). Guideline section 1B1.13 states that a court may reduce a defendant's term of imprisonment if it determines that (1) extraordinary and compelling reasons warrant the reduction, (2) the defendant is not a danger to the safety of any other person or to the community, and (3) the reduction is consistent with the policy statement in section 1B1.13. U.S.S.G. § 1B1.13. Extraordinary and compelling reasons exist, for example, when the defendant is suffering from a "serious physical or medical condition" or "deteriorating physical . . . health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. n.1(A).

Under section 3582(c)(1)(A), extraordinary and compelling reasons are "necessary—but not sufficient—for a defendant to obtain relief." United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021). The court must also consider the applicable section 3553(a) factors, such as the nature and circumstances of the offense, the purposes of the punishment, and

the Guideline sentencing range, before granting compassionate release.  In other words, the section 3553(a) factors are "an alternative and independent basis for denial of compassionate release."  Id. (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); see also United States v. Yancy et al., 20-Cr-4096, 2022 WL 6585231, at *2 (2d Cir. Oct. 7, 2022) ("[T]he district court did not abuse its discretion in independently finding that the Section 3553(a) factors weighed against [the defendant's] release.").  Accordingly, a court may deny a defendant's motion "if, in its discretion, compassionate release is not warranted because Section 3553(a) factors override . . . what would otherwise be extraordinary and compelling circumstances."  United States v. Israel, 05-Cr-1039, 2019 WL 6702522, at *2 (S.D.N.Y. Dec. 9, 2019).

DISCUSSION

I.  Olson Has Exhausted His Administrative Remedies.

The government urges that Olson's motion is barred because he has failed to exhaust his administrative remedies.  (ECF 45 at 6-7.)  Section 3582(c)(1) provides that a court may grant a defendant's motion for a sentence reduction "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

In his motion, Olson stated that he "filed an electronic request for Compassionate Release (as per institution procedure)" with the Warden at FCI Danbury on December 27, 2021.  (ECF 44 at 2.)  After 30 days without a response, Olson filed his motion with this Court.  (ECF 44.)  In its March 21, 2022 opposition to Olson's motion, the government stated that Olson's

request to the Warden "was not a request for compassionate release pursuant to Section 3582(c)." (ECF 45 at 6.) Rather, the request expressly sought release to "Home Confinement under the CARES Act." (Id.; ECF 45-2.) Thereafter, on March 28, 2022, Olson requested the Warden "reconsider [his] request under the correct Act" after receiving notice "from the Judicial Department stating that [his] request was incorrectly stated [and] should have been asking for Compassionate Release under the First Step Act, NOT the Cares Act." (ECF 49, Ex. A at 4.) The Warden denied his request for compassionate release on April 26, 2022. (Id., Ex. A at 1-2.)

Olson, who is proceeding pro se, is entitled to special solicitude. Olson was mistaken in labeling his initial request to the Warden and did not receive a denial of compassionate release until after he had filed his motion with this Court. The Court assumes, for the sake of argument, that Olson has exhausted his administrative remedies and considers his application on its merits.

II.   Olson Has Not Demonstrated Extraordinary and Compelling Reasons
      for a Sentence Reduction.

Olson argues that the impact of the COVID-19 pandemic at FCI Danbury, coupled with his personal medical conditions, justify a reduction in his sentence. Olson also urges that his rehabilitation and re-entry plan weigh in favor of a sentence reduction. The Court concludes that Olson's proffered reasons do not constitute extraordinary and compelling reasons for a sentence reduction.

The risks posed to Olson by COVID-19 do not qualify as extraordinary and compelling circumstances warranting relief, whether considered alone or in combination with other factors. Olson has received three doses of the Moderna vaccine, including a booster dose in November 2021. This "mitigates, though it does not reduce entirely, his risk of contracting"

6

the virus.  See United States v. Serrano, 15 cr. 608-4, 20 civ. 9887, 2022 WL 1443688, at *14 (S.D.N.Y. May 6, 2022).  "As several courts have concluded, the risk of COVID-19 for a vaccinated individual is substantially reduced to the point that a defendant will typically not be able to demonstrate extraordinary and compelling reasons after he has been vaccinated." United States v. Jones, 17-Cr-214, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021).  At present there are no inmates and no staff who have tested positive for COVID-19 at FCI Danbury.[2]

      Olson suffers from diabetes, high cholesterol, and high blood pressure, all of which were known to the Court at sentencing.  (ECF 40 at 46.)  Olson's conditions were successfully managed prior to his incarceration at FCI Danbury, and there is no indication from his medical records that these conditions have not been successfully managed during his incarceration.  Olson's medical conditions in light of the COVID-19 pandemic do not present extraordinary and compelling circumstances that would warrant a reduction in his sentence.

      Olson also points to the difficulties in his conditions of confinement caused by preventative measures taken during the height of the pandemic, including spending "months . . . confined to a single unit 24 hours a day with no recreation or opportunity to experience the outside air."  (ECF 44 at 5.)  Though the individualized experiences of an inmate during pandemic conditions may support a finding of extraordinary and compelling circumstances, see, e.g., United States v. Londono, 05-Cr-495, 2022 WL 17905065, at *2 (S.D.N.Y. Dec. 23, 2022) (Koeltl, J.), "difficult—but generalized—prison conditions during the COVID-19 pandemic" typically do not, United States v. Sanchez, 01-Cr-74, 2022 WL 4298694, at *2 (S.D.N.Y. Sept. 19, 2022) (Crotty, J.); United States v. Hatcher, 18-Cr-454, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021) ("[H]arsh conditions of imprisonment occasioned by the COVID-19 pandemic

---

[2] "BOP COVID-19 Statistics," Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_statistics.html (last accessed Apr. 11, 2023).

are not, without more, sufficiently 'extraordinary and compelling' to warrant compassionate release."). Olson has not pointed to conditions of confinement that, individually or in combination, warrant relief under section 3582(c).

In a letter to the Court dated April 2, 2023, Olson stated that FCI Danbury "has acknowledged the presence of Asbestos and its detriment to all inmate's health" and that he expects the BOP to release a letter stating that it "will provide medical for the next 25 years" if an inmate experiences any health issues due to asbestos exposure. He notes that he works in laundry washing items that are covered in asbestos. But Olson has not pointed to any symptoms he has personally experienced as a result of asbestos exposure. The Court concludes this circumstance, alone or in combination, does not present an extraordinary and compelling reason to reduce Olson's sentence.

Finally, Olson notes that he has completed the Trauma/Resolve Workshop and an anger management program and works 40 hours per week in the "Communications Department of the Prison's Facilities Maintenance Department" when FCI Danbury "is not in complete lockdown." (ECF 44 at 7.) He also signed up for other programs, but they were canceled due to the pandemic. (Id.) But rehabilitation alone does not justify early release. See Brooker, 976 F.3d at 237-38; United States v. Corin, 10-Cr-391-64, 2020 WL 5898703, at *4 (S.D.N.Y. Oct. 5, 2020); United States v. Bennett, 15-Cr-95, 2022 WL 3445349, at *3 (S.D.N.Y. Aug. 17, 2022); United States v. Salgado, 15-Cr-681, 2022 WL 3043100, at *2 (S.D.N.Y. Aug. 2, 2022) (stating that rehabilitation and a "spotless disciplinary record" do not warrant sentence reduction because "[t]o find otherwise would convert the process for obtaining a compassionate release into a de facto parole system, through which defendants with good behavior are rewarded with sentence reductions," contrary to Congress's intent).

### III. The Section 3553(a) Factors Counsel Against a Sentence Reduction.

Separately, the section 3553(a) factors counsel against a sentence reduction. Olson acknowledges the seriousness of his conduct and has not pointed to any circumstances affecting the section 3553(a) factors that were not known to the Court at the time of sentencing. As noted above, the Court took account of Olson's medical conditions at sentencing, which took place during the COVID-19 pandemic. (ECF 40 at 46.) The Court also noted that Olson was unlikely to reoffend but that it was "startl[ing] that [Olson] has not paid his 2020 income tax liability." (Id. at 47-48.) The Court "looked as hard as [it could] for mitigating circumstances, for a reason to vary below the guidelines in this case, and they really don't exist in this case. This is a guideline case." (Id. at 48.)

Olson argues that his sentence should be reduced to 38 months due to the "glaring" disparity between his 46-month sentence and Guzzone's 38-month sentence. (ECF 49 at 4.) But the Court was mindful at sentencing of the need to avoid unwarranted disparities. The Court inquired of the Assistant United States Attorney ("AUSA") why Olson should receive a guidelines sentence when Guzzone received a sentence slightly below the guidelines range. (ECF 40 at 39-43.) The AUSA explained that, unlike Guzzone, Olson was "a leader of a large number of participants in this fraud" and "could have stopped [the fraud] at any point in his career." (Id. at 41.) The AUSA also highlighted that Olson's circumstances were unique because he brought into the scheme a childhood friend who was paid for non-existent electrical work and because Olson expanded the fraud scheme to include two other Turner clients in addition to Bloomberg. (Id. at 41-42.) In his reply, Olson accuses the AUSA of misleading the Court by stating he brought in two other clients because he "has NEVER been investigated, questioned, or charged with" such conduct in either New York or federal court. (ECF 49 at 4.)

But this alleged conduct was not mentioned by the Court in its statement of reasons for Olson's sentence. (ECF 40 at 45-48.) The Court did, however, emphasize that "the defendant was a leader and organizer, and that there was an abuse of a position of private trust because Mr. Olson was a construction manager for Turner Construction supposedly overseeing a construction project for Bloomberg." (Id. at 45-46.)

None of the circumstances on which Olson relies, alone or in combination with each other, amount to an extraordinary and compelling circumstance warranting a sentence reduction.

CONCLUSION

For the reasons explained, Olson's motion for a sentence reduction is DENIED. The Clerk is directed to terminate the motion. (ECF 44.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 11, 2023